UNITED STATES, Appellee

v.

DAVID E. ALLBEE, Seaman, U. S. Coast Guard, Appellant

5 USCMA 448, 18 CMR 72

No. 5572

Decided January 28, 1955

CDR William L. Morrison, USCG, for Appellant.
LCDR Albert S. Frevola, USCG, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The United States Coast Guard is the source of the present case. The Acting General Counsel of the Treasury Department has certified to us the question of whether the law officer's entry into a closed session of the court-martial—while its members were engaged in deliberation on the sentence—constituted an error of such magnitude as to require that the findings and sentence be set aside. Concerning the findings themselves, suffice it to say that on overwhelming evidence the accused was found guilty of having deserted his service on January 24, 1949, and of remaining absent in desertion until his apprehension on April 2, 1954. The sentence adjudged by the court-martial for this offense consisted of a dishonorable discharge and confinement at hard labor for six months—one which was approved without alteration by the convening authority and affirmed by a board of review.

## II

After the members of the court had retired to consider the sentence, the law officer was summoned to the closed session and—as recorded in Appellate Exhibit E—was shown a written proposal of a sentence to dishonorable discharge, total forfeitures, and confinement at hard labor for six months. As he had previously pointed out to the court in appropriate instructions, the law officer stated on this occasion that —by reason of the law applicable at the time of the desertion in question—forfeitures in excess of two months' pay were illegal. Thereafter, he suggested that the court "merely reduce that part of the sentence to 'forfeiture of two months pay' or eliminate it altogether." When the president of the court questioned this recommendation the following transpired:

"LO: Captain, I think we should open the court and I should give you instructions in open court on that particular point, that is the point on the forfeitures.

"PRES: No, I don't think it is necessary, I think the court can take it from here. You think that everything except the forfeiture is in order?

"LO: Yes, the sentence is in proper form but the main objection is that the forfeiture is in excess of the limitation.

"PRES: I think we can take care of that without reopening the court.

"LO: Very well, Captain. Do you want to rewrite the sentence and let me examine it again?

"PRES: Well I'll have to poll the court and see, take a vote and see.

"LO: Very well, Captain.

"PRES: So we will let you know. Just as a hypothetical question, in the event we arrive at the same sentence except the forfeiture of two months pay and allowances, then it will be technically correct then?

"LO: Yes, sir, the only part of that sentence there that you would have to change would be put in two months pay, two months pay . . . [or] pay and allowances, two months pay rather than forfeiture of all pay and allowances. Let me check that. This imposes a problem because actually, his pay now is actually zero."

A further lengthy discussion of the accused's pay status took place, which terminated following the incisive comment of a court member that "we are just wasting a lot of time." The law officer thereupon left the session, and the court subsequently reopened to announce its sentence—from which all reference to forfeitures had been deleted.

## III

There is no doubt that error results when a law officer—without the accused and counsel—enters a closed session during which the court-martial is deliberating on sentence. This is true despite the fact that he entered merely to pass on the form of the proposed sentence. United States v. Miskinis, 2 USCMA 273, 8 CMR 73. In the past, we have deemed this error—characterized popularly as one involving a "closed conference"—to require reversal, without regard to the presence of specific prejudice. United States v. Keith, 1 USCMA 493, 4 CMR 85; United States v. McConnell, 1 USCMA 508, 4 CMR 100; United States v. Wingert, 1 USCMA 574, 4 CMR 166; United States v. Woods, 2 USCMA 203, 8 CMR 3; United States v. Mann, 2 USCMA 261, 8 CMR 61; United States v. Jester, 2 USCMA 280, 8 CMR 80; United States v. Curtis, 2 USCMA 311, 8 CMR 111; United States v. Holland, 2 USCMA 314, 8 CMR 114. However, we have refused to apply to this situation what has come to be called the doctrine of general prejudice, provided the law officer did not *participate* in the court's sentence deliberations. United States v. Miskinis, supra; cf. United States v. Taborn, 3 USCMA 61, 11 CMR 61.

In the present case, it has been argued forcefully that such participation was distinctly wanting. We choose, however, to refrain from comment on this question, but instead to move to a more fundamental aspect of the matter. In United States v. Keith, supra, in which the general prejudice approach was first applied by this Court to the

problem of "jury intrusion," we noted that "Once the tradition of non-participation is well-established in the service, it may be possible to assess the occasional lapses in terms of specific prejudice." In United States v. McConnell, supra, we voiced a similar caveat concerning the perpetual utilization of the idea of general prejudice in this area, and said: "What our course may be when the matter has become one of settled practice, we need not now decide." These cases were decided in July 1952.

Appellate Government counsel were quick to request the translation into action of our suggestion that, once the tradition of non-participation had become well-established in military law administration, it might be feasible to assess error within this context solely in terms of specific prejudice. For example, in United States v. Miskinis, supra, decided by us on March 5, 1953, it was contended that "once Keith was disseminated through military channels, the tradition mentioned was 'firmly established.'" But we replied that "The short answer to this argument is that establishment of a tradition requires more than printed directives—even in the armed forces. This is especially so where courts have indicated a reluctance to comply, even now, with all the changes brought about by the Uniform Code of Military Justice. Establishment of the tradition can only be satisfactorily shown by long and strict adherence to the letter of the law."

In the case at bar it has been argued afresh that the time has now arrived to carry into action the intimation set out with clarity in Keith and McConnell—hereafter to measure "closed conference" prejudice in terms of the facts of the individual case. We are quite willing to accept this contention. Almost two years have elapsed since our decision in Miskinis—and somewhat more since our opinions in Keith and McConnell. During this period we have examined carefully the records of trial coming before us—together with the opinions of the several service boards of review—in order that we might determine whether a tradition

of law officer segregation has become sufficiently solid to justify the application of a rule less rigorous than that heretofore followed. We are convinced that this is the case today—for we do not now perceive recalcitrance, even reluctance, in complying with the Uniform Code's clear mandate that the law officer shall sit apart. Under the Code's regime—aided, we hope, by the opinions of this Court—the law officer has assumed the role of military "judge," intended for him by the Code, and, in the main, has played his assigned part with increasing assurance and competence. He has, it appears, truly come to realize that to participate in the court's deliberations on either findings or sentence in a substantial sense contradicts, even abases, that role.

The majority's view that, with the passage of time and the attainment of greater administrative maturity, it might become unnecessary to apply the legal notion of general prejudice to the "closed conference" was criticized in this Court by one of our number as being both logically inconsistent and unknown to the law. See United States v. Woods, supra, dissent. The majority of the Court recognized, of course, that its action was not one of usual occurrence in judicial opinions—despite its want of real novelty. Nonetheless—and with a due recognition of the massive proportions of the change effected by the Uniform Code in its provision for an independent law officer—we felt compelled to adopt a drastic, if temporary, measure to insure immediate compliance with the clear and unambiguous Congressional mandate, one essential to the bipartite composition of the new court-martial.

Especially was this Court impelled to elect the course it followed by reason of fear that law officers might well be subject to pressure to enter alone the closed sessions of a court-martial at the demand of the body's president—more often than not an officer of superior grade, and one frequently entrenched in habits of thinking and conduct acquired under previous less orderly systems of military law administration. We proposed to counteract that pressure by a forceful and unmis-

takable display of our disapprobation of *all*—save explicitly permitted—law officer participation in the closed sessions of a military tribunal.

The use of the concept of general prejudice within this context—although strong medicine—was nonetheless fully within our power under the intendment of Article 67, which established this Court. No sort of conflict was created thereby with the harmless error directive expressed in Article 59 of the Code —any more than conflict may be said to exist between this latter Article, on the one hand, and on the other, the Manual's caveat that, if an "error is such a flagrant violation of a fundamental right of the accused as to amount to a denial of due process (e.g., when the disloyalty of defense counsel directly aids the prosecution) the finding must be disapproved regardless of the compelling nature of the competent evidence of record." Paragraph 87*c*. The point of this Manual passage—and the *raison d'etre* of "general prejudice"—is to be found in the fact that infinitely more is involved in the conduct of a judicial trial than the mere discovery of whether the accused before the court is guilty of the crime with which he is charged. The errors encompassed within the civilian concept of "due process," or that of "military due process" within our own area, are of such gravity that, as a general proposition, it is impermissible to affirm findings of guilt resulting from proceedings in which such irregularities occur. Even within this critical sphere, however, we have recognized that, under certain circumstances, the error will not be regarded as fatal—as where an accused has pleaded guilty, or has effected a judicial confession of guilt. United States v. Lucas, 1 USCMA 19, 1 CMR 19; United States v. Morris, 4 USCMA 209, 15 CMR 209; cf. United States v. McElroy, 3 USCMA 606, 14 CMR 24 (concurring opinion).

Since "general prejudice" is a blood, if junior, brother to the concept of "military due process," it concerns itself with errors of lesser magnitude than those touched by the latter doctrine. As to such lesser errors—and quite understandably — we possess greater freedom to shape the remedy to fit the circumstances of the particular instance. One such circumstance in the case at bar is that the misstep before us arose in a professional climate markedly different from that out of which the Keith case grew. We are confident that this differentiating factor permits us safely to apply the approach of specific prejudice to the case at bar—and as well to others which may in the future present "jury intrusion" problems. The net of all this is that we have no wish by means of unnecessary reversals to flail a horse we now confidently believe to be dead.

## IV

In applying a specific prejudice standard to the participation by a law officer in the deliberations of a ▌ court-martial, we propose hereafter to utilize a rebuttable presumption that prejudice did in fact result from such participation. Cf. United States v. Adamiak, 4 USCMA 412, 15 CMR 412; United States v. Walters, 4 USCMA 617, 16 CMR 191. In the present case, however, every possibility of harm to the accused is refuted by the circumstance that the sentence originally settled on by the court—and exhibited to the law officer in written form—was more severe than that ultimately announced. The "closed conference" related solely to forfeitures—and all reference to this punitive action was deleted from the sentence announced in open court, while other portions of the proposed penalty remained intact. In short— and as a result of the challenged conference—the court-martial simply pared off a portion of the punishment initially contemplated, an action which could not possibly have harmed the accused.

Of course, the determination of an appropriate sentence is ever a difficult and delicate process. Generally, sentence alternatives will be weighed by the court as units. Thus, it will often be impossible to discern whether a discussion relating to one phase of the punishment had impact on others. Under such circumstances, the sentence will necessarily be set aside—but the

case at hand is readily distinguishable from a situation of this nature.

## V

Having found no likelihood of specific prejudice to the accused arising from the error committed at the trial, we must affirm the action of the board of review.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.