UNITED STATES, Appellee

v

PERRY L. LINDER, Staff Sergeant, U. S. Air Force, Appellant

6 USCMA 669, 20 CMR 385

671

No. 7182

Decided February 17, 1956

*Captain Donald C. Helling* argued the cause for Appellant, Accused. With him on the brief were *Colonel A. W. Tolen* and *Lieutenant Colonel Stanley S. Butt.*

*Major John M. Rankin* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This case demonstrates the danger of permitting a court-martial to deliberate on a matter submitted to it for decision without complete instructions from the law officer. After the court had returned a finding of guilty of larceny of Government property, it heard considerable evidence in mitigation. The law officer then instructed the court on the maximum punishment for the offense found. The court was further instructed that if it had "any questions" it should reopen and request the advice of the law officer.

On receiving its instructions, the court retired into closed session to deliberate on the sentence. Almost an hour later it reopened and asked for advice regarding the pay of the accused. Receiving the requested information, the court again closed. Two minutes later it reopened. The following proceedings were then had:

"LAW OFFICER: Let the record reflect that all parties to the trial who were present when the court closed are again present in court. The time is 1712.

"If the President has any question as to the form of the sentence now, if you would like for me to look at it, what you have there, I could check it for you in open court while I couldn't do it in your closed session, if you would like me to.

"PRESIDENT: I understand. I suggest the law officer check it.

"LAW OFFICER: Do you have it written?

"PRESIDENT: Right, sir.

"The law officer examined the sentence which the court had written.

"LAW OFFICER: Has the sentence that you have adjudged, is it the one which appears on the piece of paper I have just read?

"PRESIDENT: That is correct.

"LAW OFFICER: The court has considered the footnote on page 541, footnote number 4, then has it? You have considered that footnote?

"PRESIDENT: Just as of now.

"LAW OFFICER: In view of the footnote, does the court desire to reconsider?

"PRESIDENT: I suggest the court be closed.

"LAW OFFICER: The court will be closed.

"DEFENSE COUNSEL: Wait a minute. Come back in here a minute. Before we close, if it please the court, before we close I would like to have that piece of paper that was shown by the President to the Law Officer attached to the record.

"LAW OFFICER: That piece of paper will be attached to the record as an Appellate Exhibit for the consideration of the Convening Authority. That will be after the trial. You may consider it right now.

"DEFENSE COUNSEL: I might want to withdraw that request later.

"LAW OFFICER: I want it attached myself.

"At 1719 hours, 16 March 1955, the court closed. At 1727 hours, 16 March 1955, the court reopened with all parties to the trial who were present

when the court closed again present in court.

\* &ast; &ast; &ast; &ast;

"PRESIDENT: Staff Sergeant Linder, it is my duty as president of this court to inform you that the court in closed session and upon secret written ballot, two-thirds of the members present at the time the vote was taken concurring, sentences you:

To be discharged from the service with a bad conduct discharge, to serve one year confinement, and to forfeit $35.00 per month for one year.

"LAW OFFICER: Does the president have the piece of paper?

"DEFENSE COUNSEL: May the defense . . . .

"LAW OFFICER: One moment. This piece of paper which was presented to me when the court reopened a few minutes ago will be attached to the record as Appellate Exhibit Number 2. This piece of paper from which the President has just read the sentence will be attached to the record as Appellate Exhibit Number 3.

"DEFENSE COUNSEL: The defense with the court's permission would like to exhibit—to examine Appellate Exhibit 2 prior to the closing of the court.

"LAW OFFICER: The procedure is a bit irregular but you may examine Appellate Exhibit 2.

"DEFENSE COUNSEL: This is completely irregular . . . At this time possibly it might be in order for me to call the president of the court to the stand, to the witness stand and put him under oath to explain just exactly the intention of the court in the first sentence.

"LAW OFFICER: I will not permit the President of the court to be called as a witness and interrogated in such a matter. The record already reflects that the Appellate Exhibit 2 is the document which the President presented to me when the court reopened a few minutes ago. At that time I asked the court if they had considered a particular footnote on page 541 of the Manual. The President indicated they had not and desired to re-

consider and we permitted them to do that. And so far as I am concerned the sentence that was just read is the one that will stand for this proceeding right now.

"DEFENSE COUNSEL: I would like to determine, if it please the court, if this sentence as written on Appellate Exhibit Number 2 was the sentence reached by the court.

"LAW OFFICER: I think that appears in the record now but for the purpose of clarity, the sentence appearing on this Appellate Exhibit 2, would you show that to the President?

"DEFENSE COUNSEL: Yes, sir. May I inquire of the President in open court, then, and not on the the stand, sir?

"LAW OFFICER: That is the original sentence that you arrived at, is that correct?

"PRESIDENT: This is the sentence arrived at by the court without being aware of the contents of footnote—5, I believe it is.

"LAW OFFICER: Page 541, footnote 4.

"DEFENSE COUNSEL: And that is the sentence that would have been announced by the President of the court without intervention of the Law Officer. Am I correct?

"PRESIDENT: Certainly.

"DEFENSE COUNSEL: . . . I move that the law officer rule that the sentence cannot be greater than that originally announced to the law officer, that originally arrived at by the court and announced to the law officer . . . I feel that the second sentence is not within the power of the court to give. My feeling is that the court is limited to a maximum punishment of six months' confinement and forfeiture of two-thirds pay, if it pleases the court, and I don't know whether the law officer wants to make a ruling on that or not. But I request a ruling.

"LAW OFFICER: Your request is denied. I am not going to make any ruling with regard to the sentence as it has been announced. If you feel there has been an injustice, your remedy is in appellate procedure."

The sentence finally adjudged by the court-martial was approved by the convening authority; however, he suspended the execution of the discharge. A divided board of review affirmed. The Judge Advocate General of the Air Force then certified the following question for review:

"Did the Board of Review err in holding that the sentence to bad conduct discharge, confinement at hard labor for one year and forfeiture of $35.00 per month for one year was correct in law under the circumstances of this case?"

In United States v Keith, 1 USCMA 442, 4 CMR 34, and in United States v Lowery, 2 USCMA 315, 8 CMR 115, we noted that the members of a court-martial are not presumed to know the law. Their source of knowledge of the law is the law officer. Although in the Keith and Lowery cases we were concerned with the members' lack of knowledge of the law in respect to the findings of the guilt or innocence of the accused, the presumption is equally applicable to their determination of the sentence. The law officer must provide the court members with appropriate instructions on the law which applies to all matters to be decided by them. He should not require or expect the court members to consult other sources for the law. See United States v Lowry, 4 USCMA 448, 16 CMR 22. And his responsibility in that regard does not end with the findings. In United States v Strand, 6 USCMA 297, 306, 20 CMR 13, we said: "Until the sentence proceedings are complete, the trial is not ended." Until the trial ends the law officer must supply the court members with adequate legal assistance.

Here, the law officer recognized his responsibility. Unfortunately he framed his initial instructions too narrowly. As a result the court members were required through their own efforts to find the proper legal guides by which to fix the sentence. The record shows that they overlooked an important element. When the omission was called to their attention, they reconsidered their action. The reconsideration resulted in a sentence that exceeded the original in that it included a bad-conduct discharge. The problem then is whether the reconsideration occurred under such circumstances as to constitute a violation of the rule that a court-martial cannot "reconsider the sentence with a view to increasing its severity after the sentence has been announced unless the sentence prescribed for the offense of which the accused has been convicted is mandatory." Manual for Courts-Martial, United States, 1951, paragraph 76c.

Our inquiry may properly begin with United States v Long, 4 USCMA 101, 15 CMR 101. In that case the accused was also convicted of larceny. Evidence of mitigation was presented, and the law officer instructed the court members on the maximum punishment that could be imposed. After deliberating for a time in closed session, the court reopened. The president announced that the accused was sentenced to confinement for twenty-four months, and to a forfeiture of $50.00 per month for a like period. The sentence did not include a punitive discharge. Thereupon the law officer read to the court the provisions of paragraph 127b of the Manual, which, in part, provides that a court-martial may not adjudge confinement in excess of six months unless the sentence includes a punitive discharge[1] He advised the court that the sentence was "illegal," and he directed it to reconsider the punishment. After further deliberations in closed session, the court opened and the president announced a new sentence which included a bad-conduct discharge. With Judge Brosman writing the opinion for a unanimous court, we held that the proceedings constituted a reconsideration of the sentence, and since the sentence had been announced, the court-martial could not increase its severity. We concluded that so much of the sentence as exceeded confinement and partial forfeitures for six months was illegal.

Except for the oral announcement of

---

[1] Footnote 4 appearing on page 541 of the Manual, which was mentioned by the law officer in this case, is a restatement of this provision.

the first sentence by the president of the court, the facts in the Long case closely parallel those in this case. Consequently, if there was an effective announcement of the sentence after the court's initial deliberation, the Long case would control. A majority of the appellate tribunal below concluded that the sentence originally proposed was never formally announced to the accused. See United States v London, 4 USCMA 90, 15 CMR 90. At the same time the board of review held that the proceedings were entirely open and merely pertained to "the form and not the substance of the sentence." Consequently, they determined that the proceedings were not objectionable on the ground that they amounted to an improper and prejudicial private communication between the law officer and the court. However, the accused contends that if these proceedings are regarded as an open court hearing, he should necessarily be credited with full notice of the sentence originally determined by the court. See United States v Walters, 4 USCMA 617, 16 CMR 191. He argues, therefore, that, in substance, the sentence would be "announced" as to him as well as to the law officer.

Before considering the proceedings as such, it is important to determine the nature of the law officer's ▆ inquiry regarding the court's consideration of the Manual's provision on confinement in excess of six months. If the inquiry related merely to the form of the sentence, it could hardly be successfully contended that the accused was prejudiced in a substantial right. United States v Miskinis, 2 USCMA 273, 8 CMR 73. According to our decision in United States v Allbee, 5 USCMA 448, 18 CMR 72, it would be immaterial whether the advice was given in open or in closed session. On the other hand, if the law officer's inquiry relates to a matter of substance, a private conversation between himself and the court members would constitute prejudicial error. United States v Allbee, supra.

The question of the character of the advice in this case is not an open one.

In United States v Long, supra, we held that an instruction ▆ on the same subject looked beyond the correction of mere clerical errors. It was additional advice concerning the punitive action which could be taken by the court-martial. We considered advice of this kind a matter of substance.

Turning to the proceedings, the first question to determine is whether they were open or closed. Unquestionably if they were open in the fullest sense of the word, the accused would have knowledge of the first sentence. Since his knowledge would be acquired in open court by the voluntary action of the president, we would be inclined to say that the sentence had been legally "announced." Thus the case would fall squarely within United States v Long, supra. Conversely, if the proceedings were closed within the full meaning of that term, we would be required to evaluate its prejudicial effect upon the rights of the accused. United States v Allbee, supra. After carefully reading the record, we are convinced that the proceedings were neither completely open nor completely closed.

The board of review concluded that the proceedings "occurred openly and notoriously in the presence of all." This circumstance does not provide a complete answer to our problem. If communications are had between the law officer and the court within the sight, but out of the hearing, of defense counsel and the accused, their physical presence does not make the communication any the less private. In United States v Vaughan, 3 USCMA 121, 128, 11 CMR 121, we said:

"Now, the fact that the conference was held in the room in which the accused and their counsel were seated cannot remove this case from the ratio of other closed-conference opinions heretofore rendered by this Court. United States v Taborn (No. 1282), 3 USCMA 61, 11 CMR 61, decided July 17, 1953, and cases there cited. Held out of the effective range of hearing of accused and their counsel, the conference was as fully closed

as if it had been held in a separate room. In truth, the procedure followed here was perhaps even more objectionable than that utilized in most similar cases in that the reporter was substantially excluded from the gathering."

Again, therefore, the fundamental question is whether the accused was informed of the contents of the writing on which the court had entered the original sentence. If he was regularly advised of it, the case comes within the rationale of United States v Long, supra. The board of review believed that the accused and his counsel were afforded "an opportunity to examine the note before the court retired to adjudge the sentence ultimately announced." The board based its belief on the following statement by the law officer:

"LAW OFFICER: That piece of paper will be attached to the record as an Appellate Exhibit for the consideration of the Convening Authority. That will be after the trial. You may consider it right now."

Standing alone the quoted language could fairly be construed as it was by the board of review. In the context of the law officer's later exchange with the defense counsel, it could be construed quite differently. Instead of appearing to be an invitation to defense counsel to examine the document, the statement could be interpreted as merely noting that the writing would be physically attached to the record of trial at the close of the case, but that the parties could consider it as attached "right now." What other reason would prompt the law officer to say that it would be "irregular" for defense counsel to examine the document before the court adjourned? But we need not choose between these constructions. Suffice it that, even if defense counsel was provided with an opportunity to see the paper, the record unmistakably shows that he and the accused did not know its contents before the court retired for further deliberation. Therefore it cannot be said that the sentence was "communicated to the accused" in open court. United States v London, supra, page 97. In this vital respect the proceedings approximate a closed session discussion between the law officer and the court. United States v Vaughan, supra.

Unquestionably, the law officer knew that it would be error to enter the closed session of the court for the purpose of assisting it with the form of the sentence. Apparently he adopted the procedure followed, as a convenient substitute. Perhaps the practice is desirable, but plainly there is no sanction for it. In United States v Miskinis, supra, page 275, we said:

". . . In this connection, we note that the Articles in question expressly do not permit the law officer to assist the court in putting the sentence in proper form. Authority to do this not having been conferred by Congress, we are not disposed to do so by judicial legislation."

However, more than mere advice as to form of the sentence is present here. As we indicated earlier, the law officer's action related to a matter of substance. His questions were asked under circumstances which, for all practical purposes, amounted to a closed session, or to a private communication between himself and the court-martial. See: United States v Lowry, 4 USCMA 448, 16 CMR 22. Consequently, his action constituted error.

The remaining question is whether the error prejudiced the accused in a substantial right. United States v Allbee, supra. The Government and the accused are in sharp conflict on whether the law officer's inquiry into the matters considered by the court-martial in fixing its original sentence constituted "illegal participation in the deliberations of the court." United States v Jester, 2 USCMA 280, 281, 8 CMR 80. The Government contends that the law officer's action simply provided the court members with legal information as to the limits of the sentence. It further maintains that since the law officer's advice was legally correct, the accused could not be harmed. Assuming, arguendo, the validity of equating the

676

law officer's inquiry to an instruction on the law, the difficulty with the Government's contention is that it disregards the right of the accused to protect his interests and to request additional instructions. Here, the accused knew what the instructions were, but he was ignorant of their significance. Consequently, he could not intelligently frame an exception or a request for additional instructions. He was, therefore, prejudiced in a substantial right.

The certified question is answered in the affirmative. The findings of guilty are affirmed but the sentence is set aside. The record of trial is returned to The Judge Advocate General of the Air Force. He may, in his discretion, order a rehearing on the sentence or refer the case to a board of review for such action on the sentence as will correct the error in the trial proceedings. United States v Crusoe, 3 USCMA 793, 14 CMR 211.

LATIMER, Judge (concurring in the result):

I concur in the result.

I join with the Chief Judge in his result, but I reach my conclusion by relying on principles which are slightly at variance with those announced by him.

There are two cases decided previously by us which present variations of the present question and while they bracket the problem, neither quite reaches the heart of this controversy.

In United States v Long, 4 USCMA 101, 15 CMR 101, the president of a general court-martial announced the sentence in open court. Immediately thereafter, the law officer called the court's attention to the fact that the sentence was illegal because it contravened certain special limitations set out in the Manual. He directed the court to reconsider its action, and in attempting to make the sentence conform to the law, the court increased the severity of the punishment first agreed upon. In that setting, we concluded the sentence imposed on reconsideration was illegal.

In United States v London, 4 USCMA 90, 15 CMR 90, the law officer was called into the secret deliberations of the court-martial members to consult with them on the form of the findings. When the findings were inspected by him, he observed that the court had, by exceptions and substitutions, arrived at a finding which was directly contrary to his instructions, and one which, if announced, would be illegal. He thereupon had the court reopen, reread his instructions, and directed the members to reconsider their action. The new findings involved a more serious offense but we nevertheless affirmed the verdict.

In both of those cases reconsideration by the court effected an eventual increase in the punishment, but the results are not inconsistent with the law. In the Long case, we were faced with a situation where the announcement was made in open court. By military law, when a sentence has been announced in that manner, even though it is illegal, it is erroneous to bring it within legal limits by increasing the penalty unless it falls short of a mandatory sentence provided by Congress. In the London case, the law officer had a legal right to enter the closed session on the findings, and any error had to be found in the subsequent discussion. It was apparent to us that there was no error in the law officer's statements about the contemplated verdict. In addition, by no stretch of the imagination could it be found that there was an announcement of the illegal findings. Therefore, in that instance, there was no legal reason to prevent the court-martial members from changing a finding that the accused was guilty of an offense not pleaded to one which was alleged in the specification.

There are two Articles of the Code and one section of the Manual which support the views announced in the two cited cases. Article 26(b) of the Uniform Code, 50 USC § 590, provides as follows:

"The law officer shall not consult with the members of the court, other than on the form of the findings as provided in article 39, except in the presence of the accused, trial counsel,

and defense counsel, nor shall he vote with the members of the court."

Article 39 of the same Act, 50 USC § 615, provides:

"Whenever a general or special court-martial is to deliberate or vote, only the members of the court shall be present. After a general court-martial has finally voted on the findings, the court may request the law officer and the reporter to appear before the court to put the findings in proper form, and such proceedings shall be on the record. All other proceedings, including any other consultation of the court with counsel or the law officer shall be made a part of the record and be in the presence of the accused, the defense counsel, the trial counsel, and in general court-martial cases, the law officer."

The above-quoted Articles of the Code make it crystal clear that a law officer plays in character when he reviews a finding for form prior to its announcement. But Article 26 denies to him the same authority as to a sentence. Paragraph 76c of the Manual is more specific on his lack of power in that regard, as it is authority for the proposition that he must not communicate with the court about the sentence agreed upon until after it is announced. There we find the following direction:

"*Announcing sentence.*—As soon it has determined the sentence, the president will announce the sentence in open court in the presence of the law officer, the accused, and counsel for both sides. Only the required percentage of members who concurred in the sentence should be announced. If the law officer of a general court-martial notes any ambiguity or apparent illegality in the sentence as announced by the court, he should bring the irregularity to the attention of the court so that it may close to reconsider and correct the sentence. The court may not, however, reconsider the sentence with a view to increasing its severity after the sentence has been announced unless the sentence prescribed for the offense of which the accused has been convicted is mandatory (Art. 62b). In a trial by special court-martial, an ambiguous or apparently illegal sentence may be called to the attention of the court by the trial counsel."

From all the foregoing, it is apparent that the law officer errs if he becomes a sentence consultant. Previews of the sentence by the law officer are forbidden, and in order to arrive at a contrary conclusion, much of the Manual language would have to be disregarded, as among other things, it states, "the president will announce the sentence in open court." That phrase must be interpreted to mean that the sentence must be orally stated, by the president, in an audible voice, which can be heard by officers and members of the court, and the accused and his counsel. More persuasively to the point is the following language, taken from the same paragraph: "If the law officer of a general court-martial notes any ambiguity or apparent illegality in the sentence as announced by the court, he should bring the irregularity to the attention of the court." I find in that language a rather definite requirement that the law officer must learn of any irregularity in the sentence by hearing it announced in open court and not by having it secretly furnished to him.

In spite of vigorous arguments to the contrary, I cannot accept the theory that there was an announcement of the sentence. A peek at a proposed sentence is not an announcement, it is no more than an unauthorized preview. Neither do I accept the hypothesis that the passing of notes between the president and law officer may be equated to the entering of a closed session and participation in the secret deliberations of the court. In my opinion, this case must be catalogued with those involving improper communications between the law officer and members of the court. Regardless of who may have been the original transgressor in this instance, we have an unauthorized communication about a subject which is not open to consultation. The result of the improper communication was that the law officer obtained knowledge about the sentence at a time when he was with-

out authority to receive it. Not only did he receive the knowledge prematurely, but to avoid the proscription in the Manual, he caused the court members to modify the sentence they were prepared to announce. Certainly, the way in which he proceeded is frowned on by law and precedent. I, therefore, hold that he violated the terms of the Manual and committed error when he previewed the sentence before it was announced in open court.

It is contended that the construction I adopt violates certain canons of construction, in that it renders any curative action by the law officer meaningless. Conceding, arguendo, that it will eliminate the possibility of his intercepting an illegal sentence before its announcement, that, in and of itself, does not suggest that remedial action would be in vain. There is a difference between futility and beneficence. It may be that the only steps which may be taken will be helpful to an accused, but Congress willed it that way, and merely because an act will confer benefits on one convicted of an offense is not sufficient to demand a construction which will disregard its spirit, intent and wording.

The issue herein involved goes straight to the division of responsibility between the law officer and the court on the assessment of sentence. The law officer either has or has not the authority to superimpose himself between deliberations and announcement. There are factors which can be presented to favor either side of the controversy. In support of the power to review the court-martial's proposed sentence before it is announced is the reasoning that it is better to prevent an error than it is to correct one after it has been made. Pursuing that line of reasoning one step further, it is argued that if the law officer is permitted to monitor all sentences before they are announced, mistakes will be avoided. Against this proposition is the concept that the sole responsibility for determining and imposing an appropriate sentence belongs to the members of the court, and intervention by the law officer would place him in a position where he could unduly influence the severity of the sentence. Undoubtedly, the likelihood that mistakes such as this would occur would be lessened by such intervention, but conversely, the potentialities for harm to an accused and to military justice would be far greater. Regardless of any policy considerations, the real important reason against adopting a rule which would permit intervention is that it is contrary to the expressed will of both Congress and the President. Apparently they have chosen the risk of illegal sentences as the lesser of two possible evils.

Merely because there was an improper communication between the court-martial members and █ the military judge does not require reversal. That only brings me to the next step of assessing its effect. Here I have no difficulty in finding that the accused was prejudiced substantially by the error of the law officer. It is to be noted that the court-martial members had arrived at what they believed to be a suitable punishment. Apparently the appropriate number had concluded that a bad-conduct discharge was inappropriate. Their reconsideration prior to announcement was not brought about because any one member believed the original sentence should be modified. Figuratively, the change was forced on them by the law officer. Undoubtedly, the court-martial members may reconsider a sentence prior to its announcement, if the reconsideration was not prompted by an outsider; but if the influence of an interloper is the reason for corrective action, the punishment finally imposed must not exceed that originally agreed upon. In this case, had the law officer complied with the law, and permitted the events to flow in their prescribed sequence, the present sentence could not stand. For us to leave it in effect would place the Government in a position where it would prejudice the accused by violating the law it is directed to enforce. That should not be permitted.

I acknowledge the arguments that this interpretation may result in guilty defendants getting an undeserved preferment in their sentence through technicalities. I answer it by saying

that Congress saw fit to leave with the court-martial members the power to assess a sentence without help from other court officials. I cannot question the wisdom of the legislation, but I do assert that a failure on the part of a law officer to stay within bounds in this particular area presents something more than a mere technicality.

I would, therefore, answer the certified question in the affirmative.