UNITED STATES, Appellee

v

WILLIS R. BOSWELL, Private E-1, U. S. Army, Appellant

8 USCMA 145, 23 CMR 369

No. 9345

Decided July 19, 1957

*First Lieutenant Gene E. Overbeck* argued the cause for Appellant, Accused. With him on the brief was *Major Frank C. Stetson.*

*First Lieutenant William K. Davenport* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant Chester F. Relyea.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This appeal brings up for review the effect of the announcement of findings of guilty by the president of the court-martial. The accused was charged with desertion terminated by apprehension. The absence resulted from an escape from the Disciplinary Barracks at Camp Gordon, Georgia, in which the accused had been confined as a result of a conviction by a court-martial in Korea.

At the trial, the accused testified that before his escape he had been informed by a sergeant "behind the desk" in the Orderly Room that his dishonorable discharge had been "suspended" and the adjudged period of confinement had been approved. He assumed that the suspension of the discharge eliminated him from the service, while it still gave him an opportunity to re-enlist "in the future." On the basis of this advice and the fact that he was treated like the other military prisoners, he concluded that he was no longer in the Army. From other testimony, it appears that prisoners with executed discharges and those whose discharges had been suspended received the same treatment.

Instructing the court-martial on the principles of law applicable to the case, the law officer delineated the elements of desertion, the offense charged, and those of the lesser offense of an unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. No other offense was mentioned. In addition, the law officer advised the court-martial in re-

gard to the accused's defense that he was "honestly under the mistaken belief that he was not in the Army." The court then retired into closed session to deliberate on the guilt or innocence of the accused. About thirty minutes later it reopened, and the following proceedings were had:

"PRES: Willis R. Boswell, it is my duty as president of this court to inform you that the court in closed session and upon secret written ballot, two-thirds of the members present at the time the vote was taken concurring in each finding of guilty, finds you:

"Of the Specification, Charge I: Not Guilty

"Of Charge I: Not Guilty, but Guilty of a violation of Article 95.

"LO: Ninety-five?

"PRES: Yes.

"LO: Gentlemen, the Article 95 is not a lesser included offense of Article 85, the article under which the accused was charged. The only lesser included offense to the charge of desertion—that is Article 85—is Article 86, absence without leave. At this time the court will recess for a few moments. I would like to research the law for about five or ten minutes. The court will recess.

"The court recessed at 1145 hours, 31 July 1956."

On returning from the recess, the law officer instructed the court-martial, as he had during the proceedings set out above, that Article 95 is not lesser included within the offense charged. He directed the court members to "reconsider" their findings on the lesser offense. This direction led to a further exchange between the law officer and various members of the court regarding the propriety of substituting Article 95 for the desertion alleged. Moreover, one of the court members disputed the law officer's instructions. He maintained that the omission of Article 95, as a lesser offense to desertion, from the Table of Commonly Included Offenses in the Manual for Courts-Martial was not controlling because the Table "is intended as a general guide." He also demanded "a legal authority which

prevents the court from directing the trial judge advocate . . . [to change] the charge and specification" to show a violation of Article 95. At that point another recess was taken.

When court reconvened, the law officer referred the court members to paragraph 55 of the Manual. (See United States v Trojanowski, 5 USCMA 305, 17 CMR 305.) A considerable discussion followed, but we need not set out the details. Eventually, the law officer instructed the court that since it had "found and announced" that the accused was not guilty of desertion, that finding was "irrevocable." However, he went on to say that the court could retire to deliberate on the lesser offense of absence without leave. Again the court withdrew into closed session. Almost an hour later it reopened. The president announced that the court had found the evidence was not legally sufficient to sustain a finding of guilty of desertion, but it was sufficient to prove a violation of Article 86. Nevertheless, the court believed the evidence tended to prove a violation of Article 95, and that the accused "would be more properly charged" under that Article. Consequently, it suspended the proceedings in accordance with paragraph 55 of the Manual.

Within the hour the court reconvened. A letter from the convening authority was read into the record. It noted that the Statute of Limitations had run on the offense of escape from confinement, and it directed that the trial proceed on the original charge. A court member requested advice on the Statute of Limitations relating to an unauthorized absence. Informed that it had no application in time of war, he asked, "What war?" (See United States v Ayers, 4 USCMA 220, 15 CMR 220.) Eventually, the court retired for further deliberations. Fifteen minutes later, the court returned and the president announced that it had found the accused guilty of an unauthorized absence, in violation of Article 86.

We have no desire to criticize any of the trial personnel for their part in complicating and confusing the issues in the case. Our duty is not to assess

**147**

fault, but to determine whether the accused has been legally convicted. Nevertheless, we disapprove the practice of providing the court members with a copy of the Manual for Courts-Martial for use in their closed session deliberations.

Recently, in United States v Wilson, 7 USCMA 713, 23 CMR 177, we reemphasized the responsibility of the law officer in the instructional area. We said that if "we are to build a real system of military justice, we must ensure that the law officer is shouldered with the responsibility of seeing to it that the court-martial members are given proper guideposts to reach a fair and just verdict." In one of our early opinions we held that the law officer does not discharge his duty to instruct by merely referring to paragraphs of the Manual and directing the court members to read those paragraphs. One of the reasons we gave for that decision is particularly applicable to this case. We pointed out that the court members "may not understand . . . [the Manual's discussion] and may well be confused by additional matter appearing in the text, not applicable to the case before them." United States v Gilbertson, 1 USCMA 465, 4 CMR 57. See also United States v Richardson, 2 USCMA 88, 6 CMR 88. Later we held that it is also error for the court members to consult cases referred to by the law officer "for the purpose of determining for themselves what law should be applied to the case." United States v Lowry, 4 USCMA 448, 453, 16 CMR 22. In short, it is improper for court members to consult "outside sources" for information on the law. In that respect the Manual is no different from other legal authorities. It, too, has no place in the closed session deliberations of the court-martial.

Turning to the announcement of the findings, one thing stands out with unmistakable clarity, namely, the findings initially announced were the findings actually determined by the court. Two questions are thus raised: (1) Is escape from confinement an offense lesser included within desertion? and (2) if it is not, did the original findings constitute an acquittal of the offense charged and of its lesser offense, absence without leave? The first question must be answered in the negative, and the second in the affirmative.

To prove an escape, in violation of Article 95, it must be shown that the accused was placed in lawful confinement. United States v Gray, 6 USCMA 615, 20 CMR 331. While such evidence bears upon the accused's intent to absent himself or remain away without authority (see United States v Wilson, 4 USCMA 3, 15 CMR 3), it is not an integral part of the general proof required for desertion. Nor, aside from any question of duplicity, do the allegations in the specification state the offense of escape. Cf. United States v Hobbs, 7 USCMA 693, 23 CMR 157; United States v Davis, 2 USCMA 505, 10 CMR 3. Hence, neither from the standpoint of allegation nor from the standpoint of proof, is escape from confinement a lesser offense included within the desertion charge.

As far as the second question is concerned, the court-martial found the accused not guilty of the specification of the charge. It is well-settled that acquittal by a general verdict of the offense charged is also acquittal of every lesser offense necessarily included within the charge. Ex parte Nielsen, 131 US 176, 33 L ed 118, 9 S Ct 672 (1889). Since absence without leave is lesser included within the charge, the court-martial's findings necessarily resulted in the accused's acquittal of that offense as well as of desertion. True, the court-martial made a further finding, but that finding was not embraced within the charge and can be rejected as surplusage. Statler v United States, 157 US 277, 39 L ed 700, 15 S Ct 616 (1895).

In United States v London, 4 USCMA 90, 15 CMR 90, we had before us a similar situation. The accused was charged with housebreaking and larceny, in violation of Articles 130 and 121, respectively, Uniform Code of Military Justice, 10 USC §§ 930 and 921. After the court had deliberated on the find-

148

ings, it called the law officer and the reporter into the closed session to assist in putting its findings into proper form. By its findings, the court acquitted the accused of the offenses charged, but found him guilty of being an accessory after the fact, in violation of Article 78, Uniform Code of Military Justice, 10 USC § 878. On learning of these findings, the law officer reopened the court. He again instructed the court members on the legal alternative findings they could make because it appeared to him that they had not understood his original instructions. The court retired for further deliberations.

When the court reopened, it announced that it had found the accused not guilty of housebreaking, but guilty of larceny. No mention was made in the announcement of the offense of an accessory after the fact. On appeal to this Court, the accused contended that the closed session disclosure to the law officer of the initial findings was tantamount to an announcement of the findings, and resulted in his acquittal of the offenses charged. He further contended that that part of the findings which related to a violation of Article 78 was surplusage. We rejected these contentions. We were careful to point out, however, that the announcement of the original findings was not made in open court. As a result, it was not a final verdict, and it could be reconsidered by the court-martial after it had received clarifying instructions. We said: "Certainly, if a court formally and correctly announced a finding of not guilty in open court, it could not thereafter reconsider its finding and return a finding of guilty."

The board of review below recognized that the quoted statement is directly applicable here. It construed the phrase "formally and correctly announced" as meaning that the finding announced must be a legal finding before it can have legal effect. Since the finding as to Article 95 was illegal, it concluded that the court-martial could properly reconsider all of its announced findings. This construction of our opinion is wrong. The word "correctly" simply referred to the familiar principle that,

if the president of the court incorrectly announces the actual findings, a correction of his "slip of the tongue" is not a reconsideration of the findings. Only two weeks before the *London* opinion, we decided United States v Downs, 4 USCMA 8, 15 CMR 8, on that very point. Here, the findings announced by the President were the true findings reached by the court-martial in its deliberations on the accused's guilt or innocence. There was no error in the announcement. The findings, therefore, were final. Insofar as they acquitted the accused of the offenses charged, they could not be reconsidered. Insofar as the illegal part was concerned, the findings could be reconsidered, but only for the purpose of deleting that part from the formal announcement. In the absence of such action, the law will disregard the illegal part of the findings. Statler v United States, supra; Manual for Courts-Martial, United States, 1951, paragraph 74d(3).

Similar situations have been before us in cases involving reconsideration of the sentence. In United States v Linder, 6 USCMA 669, 20 CMR 385, the court announced the sentence in open court. In part the announced sentence was illegal in that it provided for confinement in excess of that which the law allows for a sentence which does not include a punitive discharge. The law officer called the court's attention to the illegality and instructed it to reconsider the sentence. The court did so. It announced a new sentence which reduced the period of confinement adjudged in the first sentence from two years to one year, but also provided for a bad-conduct discharge. We held that since the first sentence announced by the court was its "actual" determination, the sentence was final and that part which was illegal must be disregarded. In United States v Hounshell, 7 USCMA 3, 5–6, 21 CMR 129, we reached the same result. What we said in that case in connection with the reconsideration of the sentence is appropriate to this case in regard to the reconsideration of the findings.

"It is apparent that the court misinterpreted the law. It is equally ap-

149

parent however that the president of the court in his announcement of the sentence did not misstate the actual sentence determined by the court members. United States v Castner, 3 USCMA 466, 13 CMR 22. Consequently on announcement in open court, the sentence became final and could not thereafter be increased in severity. United States v Linder, 6 USCMA 669, 20 CMR 385; United States v Long, 4 USCMA 101, 15 CMR 101."

The decision of the board of review is reversed. The findings of guilty are set aside, and the charge is ordered dismissed.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting).

I dissent.

The issue which we permitted to be argued in this case was whether the court-martial's finding that the accused was not guilty of the charge and specification alleging desertion but guilty of escape from confinement in violation of Article 95 constituted an acquittal of the lesser included offense of absence without leave.

In addition to answering the only question which is properly before us, a majority of the Court ▉▉▉▉▉ ▉ seizes upon this case as a foot-in-the-door method of laying down a far-reaching and devastating principle whereby it overturns the procedure used by all courts-martial since the adoption of the Code. I refer particularly to the statement that the Court disapproves of providing the court members with a copy of the Manual for Courts-Martial, United States, 1951, for use in closed session deliberations. I assume from that observation that the Court now considers the use of the Manual by the court-martial as an error which denies an accused a fair trial. That is a complete reversal from the rule we announced early in our history and, if grafted into military law, it will result in the destruction of a method of proceeding which has been peculiar to military law for many years. So much has the method been relied upon, I dare say, that if the alleged error could now be raised, reversal of

practically every case heard by military courts since May 31, 1951, would be required. It is hard to conjure up a comparable instance where such a well-established principle is buried with so little justification.

In United States v Gilbertson, 1 US CMA 465, 4 CMR 57, the Chief Judge, in writing for a majority of the Court, announced the following principle:

"We have no disposition to criticize referral to the Manual for pertinent amplifying material after full instruction on the elements has been given. This may well be helpful to the court."

The full import of that language can be appreciated when it is considered in connection with the facts of that case. In that instance, the law officer, in giving one of his instructions, stated: "The court's attention is invited to paragraph 163, page 216, MCM, 1949, as to the discussion of the offense in Charge I."

I fail to understand how the first statement could possibly make sense unless the members of the court-martial had a Manual with them to peruse while they were considering the findings. But subsequently the matter was specifically an issue before the Court in United States v Kunak, 5 USCMA 346, 17 CMR 346. There we definitely refused to find that the practice was erroneous for we stated:

"Defense counsel lastly contend that the report of the closed conference, previously quoted, shows that the law officer allowed members of the court-martial to take a copy of the Manual for Courts-Martial into the closed session when the court was deliberating on the findings. This, they argue, was prejudicial error. We have previously suggested that it is permissible for the court-martial members to refer to the Manual. In United States v Gilbertson, 1 USCMA 465, 4 CMR 57, we stated:

'We have no disposition to criticize referral to the Manual for pertinent amplifying material after full instruction on the elements has been given. This may well be helpful to the court.'

"A reference to the Manual would be of no help to the court-martial if the members were denied access to it. Aside from that, here, at most, the court-martial members used the Manual for the purpose of determining the form for the findings. We find no error in that act."

The Manual itself lends credence to those holdings, for on page 518, where the trial procedure is outlined, the law officer is directed to instruct the court that it should observe the rules set forth in paragraph 74a of the Manual. In the absence of a Manual that instruction would go for naught, as would many others.

I know not how far the present trend will veer away from the former doctrine, but I desire to point out that much of the information set forth in the Manual for Courts-Martial must necessarily be known before the members can be considered properly advised on their duties, and it is impossible for the law officer to instruct in all areas. In that connection, I fail to see how such variations from civilian practice as findings by exceptions and substitutions, the use of limitations to control the imposition of sentences, and many other matters, can be adequately dealt with if the Manual is not available for a guide. More crippling, however, will be the result if the rule is applied to special courts-martial, where the principles of law which must be considered to dispose properly of the findings and sentence are unavailable except by reference to the Manual. Perhaps the Court will eventually compromise in the inferior court domain by saying the guiding member of the special court, the president, may look, read, and learn, but other members of the court may not.

While I understand that in civilian courts normal procedures do not permit juries to have the use of outside authorities for their use during deliberations, there are wide differences between the necessities of two systems. In the military system, members of the court-martial are permitted to rule on certain legal questions touching on the merits; they determine some of the legal questions involved in challenges; they must arrive at appropriate findings without the aid of verdicts written by judges; they must fix the punishment within many limitations imposed by the Manual; and they must ascertain the law and procedure to be used in voting on questions other than guilt or innocence. While I have mentioned only a few areas, there are others which might be enumerated, and it is reasonably foreseeable that much damage will be done to military justice if we force a change. So far as I am able to ascertain, the principal reason for the new rule is that we have held that a few statements found in the Manual do not accurately announce the law as interpreted by us. However, those are isolated instances, and the misinformation, if relevant to the case, can be corrected appropriately by the law officer without throwing away the book which serves the system well.

The second area of disagreement between my associates and myself has to do with their conclusion that the accused is entitled to a dismissal because the court-martial found him not guilty of all offenses. I believe that to so hold gives him much more than that to which he is entitled under any reasonable interpretation of this record. I have no dispute with the principle that, if a court-martial returns an unqualified finding of not guilty, an accused has been acquitted of the principal and all lesser included offenses. However, I have read the United States Supreme Court case of Ex parte Nielsen, 131 US 176, 33 L ed 118, 9 S Ct 672 (1889), cited by the majority, and, while it contains the statement set out in the Court's opinion, the facts show it has no application to our problem. The same can be said of Statler v United States, 157 US 277, 39 L ed 700, 15 S Ct 616 (1895). Strangely enough, in the latter case the true rule is that a verdict must be construed as a whole, not as separate and divisible parts. If my associates would apply that rule, this dissenting opinion would become the law.

In military law, we do not have proposed verdicts prepared by judges and submitted to juries, we have findings

prepared in secret deliberations by members of the court. True it is that they can call for assistance from the law officer in putting the findings in appropriate form, but they quite often need helpful guidance before they reach that point. For that reason, I have a great deal of difficulty in understanding why the slightest departure from the best form and language entitles an accused to go free. I certainly believe the better rule places on us the duty to give effect to the intent of the fact finders. While the intent must be ascertained from the words used, when a finding as a whole conveys the idea to the common understanding of ordinary persons that a finding of guilt of some offense is intended, it seems contrary to good judicial administration to reach a contrary result. My associates say there is one thing which stands out with unmistaken clarity in this record, namely, that the findings announced were those actually reached by the court; but that is an understatement. It is just as clear from the transcript that the court-martial members did not intend to acquit the accused of all offenses. What they specifically refused to do for the accused we do for him, and I suppose the error is found to creep in because, by some method of reasoning, the Court breaks the sentence into two separate parts and then places full reliance on the fragment favorable to the accused. In order to do that, the second part must be discarded as surplusage because, if any effect is given to it, the present result cannot be reached. That is not my way of interpreting a finding, for each word and phrase should, if possible, be given some force and effect.

In United States v London, 4 USCMA 90, 15 CMR 90, the accused was charged with larceny. The law officer gave appropriate instructions, including one to the effect that being an accessory after the fact was not an included offense. When he entered the closed session of the court to assist in putting the findings in proper form, he was advised by the president that they had ignored his advice and found the accused not guilty of larceny but guilty of being an accessory. The law officer then opened the court and advised the members that the finding proposed would find the accused guilty of an offense not included in the crime charged and that they must return and consider the findings again in the light of the instructions he had given. We held that that method of operation was not fatal to the subsequent finding of guilty of larceny. Conceding that in that case the findings were not announced in open court, I do not find that difference persuasive for, even in a closed session, a law officer could not compel the court members to consult further if they had, in fact, arrived at a finding of not guilty.

In summation, when this issue is brought within the comprehension of an ordinary person, we are presented with this simple problem. In the military, findings by exceptions and substitutions are permitted, and in that method of reaching a finding, military law differs from civilian law. When the court-martial members found the accused not guilty of desertion but guilty of escape from confinement, they did not intend to free him. They searched for an offense which was lesser in gravity than desertion and greater in enormity than absence without leave. They settled on a violation of Article 95, but that was an illegal finding because it was not within the allegations of the specification. Therefore, the law officer was fully warranted in rejecting the illegal portion, for he is not required to sit by and permit an invalid finding to be returned. Of course, he cannot coerce a verdict or permit the court-martial to reconsider a finding for the purpose of increasing the gravity of the offense. However, if any content is given to the language used by this court, the invalidated finding was for another greater than the ultimate one found, and I had always supposed a law officer could permit the court to return a legal finding when it was lesser than the illegal one agreed upon.

A fair amount of research on this question satisfies me that the books are filled with cases from many jurisdictions which have adopted the general principle that if a verdict is incorrect in form, is illegal, or not responsive to an indictment, a trial judge should refuse to receive it, re-instruct the jury

152

as to what verdicts are proper, and have them return and deliberate further. That principle is just as essential in military law as it is in civilian courts, and perhaps more so, because as previously stated the court-martial has the right to use substituted and excepted language in its findings. In his opinion in United States v London, supra, the Chief Judge quoted the general rule from Abbott, Criminal Trial Practice, 4th ed. The quotation he used is found in that author's work in section 740, page 1336, and it is as follows:

"§ 740. Power of Court to Require Jury to Correct Verdict. — Before a verdict, whether oral or sealed, is recorded, and the jury have been dismissed from their relation as such to the case, the court has power to require them to reconsider their verdict, not merely to correct a mistake in form or make that plain which is obscure, but to supply what is wanting, or alter it in substance, if they so agree. This may be done with or without the consent of counsel.

"If the verdict returned by the jury finds the accused guilty of a crime for which he cannot be convicted, or it appears that the verdict is not in fact the verdict which the jury intended to return, or that it is irresponsive, or unintelligible, or legally absurd, or defective, or to fix the punishment the court may before the verdict is recorded, direct the jury to amend it."

If it is our ultimate desire to keep law officers from consulting with court members during their secret deliberations, we should permit some method whereby the rendition in open court of illegal, improper, defective, or legally absurd findings may not be used as a vehicle to freedom from any conviction. At best, the theory of the Court's opinion elevates form over substance and constructs an acquittal clearly not intended by the court-martial.