UNITED STATES, Appellee

v

GERALD R. LEWANDOWSKI, Seaman Recruit,
U. S. Coast Guard, Appellant

17 USCMA 51, 37 CMR 315

No. 19,969

May 26, 1967

*Lieutenant David C. Nolan*, USCGR, argued the cause for Appellant, Accused.

*Lieutenant Commander Leon D. Santman*, USCG, argued the cause for Appellee, United States.

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a special court-martial convened at San Francisco, California, charged with desertion terminated by apprehension, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. To this charge he entered a plea of not guilty. He was found not guilty of desertion but guilty as to the lesser included offense of absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He was sentenced to a bad-conduct discharge, confinement at hard labor for six months, and forfeiture of $56.00 pay per month for six months. The convening authority approved only so much of the sentence as provided for the bad-conduct discharge, confinement at hard labor for three months, and forfeiture of $56.00 pay per month for three months. The supervisory authority approved the sentence as reduced by the convening authority and, in addition, suspended the execution of the punitive discharge for the period of confinement and six months thereafter with provision for automatic remission. A board of review in the office of the General Counsel, Department of the Treasury, approved the finding of guilty—except for the word "apprehension"—and the sentence. Exercising his right under Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the General Counsel now asks:

"Was the Board of Review correct in its determination that the action

of members of the court in reading the Manual for Courts-Martial during the proceedings was harmless error?"

Prosecution's proof of the unauthorized absence involved consisted in part of a duly authenticated extract copy of a unit personnel diary. Admission of this document and the entry contained therein, reflecting the inception of appellant's unauthorized absence, was opposed by defense counsel as being hearsay. Trial counsel supported his evidentiary offer by alluding to Manual for Courts-Martial, United States, 1951, paragraph 146a, page 313. There found is the pronouncement that unauthorized absence is usually proven, *prima facie,* by entries contained in such record. As the argument on this question waxed strong, the following exchange took place:

"Mr. LANDIS [a court member]: The Personnel Diary is compiled from entries of the Ship's Log and then on top of that, here on page 313 of the UCMJ, it says the Personnel Diary is admissible evidence.

"PRES: Subject to the objection by any member of the court, Prosecution Exhibit No. 2 is admitted to the record as Prosecution Exhibit No. 2.

"DC: The defense objects to the procedure used in ruling on that motion. Mr. LANDIS had access to the Manual for Courts-Martial at sometime during this proceedings, and objection is on that basis.

"TC: As a necessary part of the proceedings of special court-martial, when the members have the power to object to the President's ruling, for that purpose they necessarily also have to have access to legal authorities when they are not otherwise familar [sic], to have access to legal authority as nobody is allowed to have legal authority in closed session.

"DC: The defense contends that if Mr. LANDIS wanted access to the Manual for Courts-Martial he should have asked the trial counsel for a reading of the Manual for Courts-Martial with any pertinent changes that were made by the Board of Re-

view or the Court of Military Appeals to this. The Manual for Courts-Martial by itself can no longer be considered authority, it has to be read in light of decision.

"PRES: Your statement is correct there. (Directed to Mr. LANDIS) Is your lack of objection based on the Manual for Courts-Martial?

"MR. LANDIS: My lack of objection sir, is based on the fact that it was read to us, the trial counsel read the section to us and then put it on the desk here. And so we could say, I suppose, that I knew of this section because trial counsel had pointed it out to us.

"PRES: I fail to see now what your objection is, you did not object to the trial counsel presenting the Manual.

"DC: I thought the trial counsel was presenting the Manual to you sir, as President of the court.

"PRES: But his statement during the time that he was presenting it was, as stated in the Manual, so therefore he did not need to present the Manual other than to emphasize his statement.

"DC: Well, maybe for these purposes, it will be sufficient if the record indicates that the trial counsel did show the Manual for Courts-Martial to the President, and that one member of the court did read from the Manual for Courts-Martial in relation to the question of ruling on the objection for the defense. If the record could indicate that, I think the defense would be satisfied.

"PRES: Let the record show that the trial counsel will be returned the Manual for Courts-Martial."

Trial thereupon proceeded to the end, hereinbefore noted. Lieutenant (jg) Landis, the court member, later submitted an affidavit acknowledging that he had "glanced at the [M]anual" when trial counsel placed it open before the president. Landis contended he read only that portion on page 313 of the Manual, referred to by trial counsel,

regarding the admissibility of personnel diary entries.

The staff legal officer, in reviewing the record, assessed the situation in light of the lieutenant's attestations and found error present, relying on United States v Rinehart, 8 USCMA 402, 24 CMR 212. He did not, however, believe that the "fleeting use" made of the Manual in this case resulted in harm to the accused. He construed United States v Dobbs, 11 USCMA 328, 29 CMR 144, as being a denouncement —regardless of prejudice—of the last vestige of reluctance to comply with the order set forth in United States v Rinehart, supra.

A Coast Guard board of review thereafter measured this purported abridgement of the *Rinehart* doctrine in much the same fashion. Finding error, but no prejudice, they opined:

". . . The Dobbs trial was held only 14 months after the *Rinehart* opinion was published; it was still too early to apply a standard of actual prejudice to deviations from the *Rinehart* decree. *United States v Dobbs* is not authority for the proposition that any and every unauthorized use of the Manual in a courtroom will be fatal to the proceedings without regard to the existence of actual prejudice. On the facts before us, there was only harmless error. *United States v Soulis, 28 CMR 722.*" [United States v Lewandowski, January 13, 1967.]

Appellate defense counsel now foresee a return to pre-*Rinehart* practices if this Court permits a substitution of what is said to be the test of specific prejudice in place of the general prejudice doctrine.

Taking the contrary view, Government counsel concede the existence of error but contend the reasoning behind *Rinehart* doesn't exist here, for lacking is the opportunity to "engage in closed session discourse of immaterial paragraphs of the Manual" or to "rummage through . . . the Manual, indiscriminately rejecting and applying a myriad of principles—judicial and otherwise—contained therein." *Rinehart,* supra, at page 406. Indeed, there is no showing now, contends the Government, as there was in *Dobbs,* of a reluctance to "accommodate . . . the spirit of *Rinehart.*" *Dobbs,* supra, at page 330. In short, the use of the Manual in this case is considered completely reviewable. Thus, it is concluded that a prejudice test, as required by Code, supra, Article 59(a), 10 USC § 859, may safely be adopted.

We agree that on the facts here present, appellant's conviction should not be overturned. Correlating cases emphasizing Manual deficiencies as well as the responsibilities of a law officer in the trial arena, we said in United States v Boswell, 8 USCMA 145, 148, 23 CMR 369:

". . . In short, it is improper for court members to consult 'outside sources' for information on the law. In that respect the Manual is no different from other legal authorities."

The fears expressed in *Boswell* became fact in *Rinehart* when prosecution, in closing argument, directed the court-martial's attention to specific, yet inappropriate, portions of the Manual —with other paragraphs being "discovered" by the court-martial during closed session. For the reasons therein noted, this Court ruled that members of a general court-martial or special court-martial (except the president) discontinue the practice of using the Manual during the course of the trial or while deliberating on findings or sentence.

Subsequently, we found prejudice in a desertion case where, because a Manual was present in closed session, the law officer was called upon to instruct the court to disregard and ignore invalid portions of the Manual "it shouldn't see in the first place" (United States v Shaughnessy, 8 USCMA 416, 420, 24 CMR 226); in a case where the law officer correctly advised the court on the applicable law but then refused to give a requested instruction stating that he found nothing to prevent the court from reading the Manual themselves (United States v Elliott, 8 USCMA 548, 25 CMR 52); and, in still another instance, where trial counsel argued erroneous principles found in

the Manual, an instrument that accompanied the court-martial in closed session (United States v Gravley, 9 USCMA 120, 25 CMR 382).

In *Dobbs,* supra, a case tried more than a year after *Rinehart,* each court member had before him a copy of the Manual when court reconvened following a continuance. When the case came up for review, the Government filed an affidavit from the president of the court showing that he had consulted only the procedural guide found in the latter portions of that instrument. Our action in setting aside the conviction must be weighed in accordance with our comment:

". . . the instant procedure indicates a reluctance to accommodate earlier thinking and earlier practice to the purposes and the spirit of *Rinehart.* To give the president of the court a copy of the Manual seems to stress the desirability of former procedures over the principles set out in the *Rinehart* case. It suggests an erosive process which we cannot sanction." [United States v Dobbs, supra, at page 330.]

In short, the *Dobbs* opinion was intended as a positive reaffirmance of our belief in the essential soundness of, and the need for adherence to, the *Rinehart* sanctions. The ensuing years have in no way lessened our conviction as to the worthiness of this rule. Our insistence for compliance therewith has diminished not one whit. Cf. United States v Kentner, 12 USCMA 667, 31 CMR 253.

Turning to this record of trial we find an entirely different situation. Here, there was no use of the Manual within the contemplation of *Rinehart.* There was no perusal of the Manual in search of the law, for trial counsel had already set out for the court the section in question. Indeed, a review of the previous colloquy shows that Lieutenant Landis, the court member, objected to trial counsel's ready reference to that document. In the main, he was concerned with the president's ruling on the question at hand. The latter, of course, was carrying out a duty well recognized in *Rinehart,* as was the member in exercising his right to object. Code, supra, Article 51(b), 10 USC § 851. The total circumstances before us, making assessment possible, show on the record itself no violation of the *Rinehart* rule, to which, as we have previously stated, we adhere without reservation.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.