UNITED STATES, Appellant

v

THEADEL KENTNER, Seaman Apprentice, U. S. Navy, Appellee

12 USCMA 667, 31 CMR 253

*Lieutenant Harold J. Wallum,* USNR, argued the cause for Appellant, United States.

*Lieutenant Colonel M. G. Truesdale,* USMC, argued the cause for Appellee, Accused.

## Opinion of the Court

KILDAY, Judge:

The instant special court-martial case involves a rehearing, and that fact gives rise to the certified question before us.

Despite his plea of not guilty accused was, at his initial trial, convicted on a single charge and specification of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. The convening authority of that special court-martial approved the findings and sentence but the officer exercising general court-martial jurisdiction thereafter set them aside and ordered a rehearing. In due course accused was again tried by another special court on the same larceny count and, in addition, certain other specifications laid under the General Article of the Code, 10 USC § 934. He was once more convicted of the theft, and of two Article 134 violations. Again, when the case reached him, the convening authority approved the prior proceedings. The supervisory authority with general court-martial jurisdiction, however, reversed all but the single finding of guilty of larceny, and reduced the adjudged sentence to bad-conduct discharge, confinement at hard labor for three months, and reduction to the grade of seaman recruit.

Subsequently, a divided board of review disapproved the findings and sentence *in toto,* ordering yet another rehearing. It is that decision that gives rise to the question before us for, pursuant to Article 67 (b) (2), Uniform Code of Military Justice, 10 USC § 867, the Acting The Judge Advocate General of the Navy has certified the following issue to this Court:

"Was the Board of Review correct in holding that the remarks of the GCM authority in his action on the case were so improper, and constituted such unlawful influence upon the president of the court, that the court erred in failing to sustain the challenge for cause directed against him?"

The facts pertinent to our inquiry involve the action taken by the officer exercising general court-martial jurisdiction after the first trial, the text of which we quote:

"In the foregoing special court martial case of Theadel Kentner, 536 52 89, seaman apprentice, U. S. Navy, it appears from the record of proceedings that a handbook of court martial law was read by a member of the court during the trial, which act constitutes error prejudicial to the substantial rights of the accused. The U. S. Court of Military Appeals in U. S. v Rinehart, 8 USCMA 402, 24 CMR 212, held as follows:

" 'The only appropriate source of law applicable to any case should come from the law officer and the court members should not be permitted to look to outside sources, including the Manual, for the law either as to the findings or the sentence. This rule applies not only to general courts-martial, but also to special courts-martial, except to the extent that the president of a special court-martial must make use of the Manual in the performance of his duties which are analogous to the duties of the law officer. Accordingly, it is directed that the practice of using the Manual by members of

a general court-martial or special court-martial (except the president) during the course of the trial or while deliberating on the findings and sentence be completely discontinued on a date no later than 30 days after the promulgation of the mandate in this case.'

"Whatever feelings the Supervisory Authority may have in regard to the inconsequentialities of the act of the member reading the handbook (and the Supervisory Authority does have strong feelings), the fact remains that the Court of Military Appeals has spoken and the Supervisory Authority is bound by the mandate of its decision.

"It is further noted that the President of the court failed to instruct on the voluntariness of the confession at the time of admission into evidence, nor did he instruct on the voluntariness of the confession in his final instructions (U. S. v Wenzel, 9 USCMA 140, 25 CMR 402).

"Accordingly, the findings of guilty and the sentence as approved by the Convening Authority are disapproved and a rehearing is ordered before another court martial to be hereafter designated."

At the rehearing it was developed, on voir dire examination, that the president of the court had attended a pretrial briefing in the absence of accused and his counsel, and that the above-quoted action had been exhibited to him at that time. Accordingly, the defense leveled a challenge for cause against the president. It was overruled by the court-martial and the senior member continued to preside at accused's trial.

A majority of the board of review joined in reversing accused's conviction because the president of the special court-martial had seen the supervisory authority's action on the prior trial. One member dissented from the disposition ordered by his colleagues. He took the view that paragraph 81, Manual for Courts-Martial, United States, 1951, permitted special court presidents to examine the record of former proceedings and that, although the remarks concerning *Rinehart* set forth in the action were indeed improper, they did not give rise to prejudicial error.

We need not be concerned with the scope of paragraph 81c of the Manual, supra, for quite plainly the supervisory authority's gratuitous comments were in no wise necessary for guidance of those who were to preside at subsequent proceedings. Surely there can be little question but these extraneous remarks were indeed—as even the dissenting board of review member characterized them—improper. United States v Rinehart, 8 USCMA 402, 24 CMR 212, was, at the time of the supervisory authority's action, and is, the law. And we reaffirm the decision of this Court in that instance that members of courts-martial, other than the president of a special court, shall not consult the Manual for Courts-Martial for the law either as to findings or sentence. Law books unnecessarily in the hands of laymen may be as dangerous to the proper administration of justice as scalpels in the hands of laymen may be to the success of major surgery. Further, the feelings the supervisory authority might have as to "inconsequentialities" involved in decisions of this Court are as unimportant in the pans of the scales of justice as the views the members of this Court may entertain as to the strategy and tactics of one exercising Naval command. We do not question the privilege of such individuals to disagree with us but, regardless of whether it be so intended, it is clear that expression or communication of those feelings by a reviewing officer may not be permitted to deprive an accused of a fair hearing.

The problem before us, therefore, may be decided on the simple basis of whether the senior court member, having seen the quoted action, would be influenced thereby. True it is that the president stated he had no opinion as to accused's guilt or innocence. Such protestations of impartiality, however, while often significant and persuasive, are not necessarily conclusive. See United States v Carter, 9 USCMA 108, 25 CMR 370; United States v Washing-

ton, 8 USCMA 588, 25 CMR 92; United States v Zagar, 5 USCMA 410, 18 CMR 34. See also United States v Grant, 10 USCMA 585, 590, 28 CMR 151. Under all the circumstances, we conclude there is a fair risk that the president might have been influenced by the improper remarks to minimize the question of the accused's guilt or innocence —as to which the supervisory authority intimated there was no doubt—and concentrate solely on *pro forma* observance of the condemned "inconsequentialities" of the law. With that implication present in improper comments which were entirely unnecessary to the action ordering a rehearing, and which went from the superior officer acting as supervisory authority to a subordinate who must sit as a court member in judgment of accused, we are constrained to affirm the decision of the board of review. The situation is not unlike United States v Martinez, 11 USCMA 224, 29 CMR 40. It is equally true here, as in that instance, that the motives of the individual expressing disagreement and his absolute right to a private opinion are of no importance. What is critical is that the fairness of the proceedings in a particular case not be affected as a consequence of giving voice to such criticism.

Here, we conclude the risk is present that the supervisory authority's gratuitous and critical remarks in his action, which admittedly was brought to the attention of the challenged court president in a private pretrial briefing, may have impinged on accused's right to a fair trial. The certified question, therefore, is answered in the affirmative.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.