UNITED STATES, Appellee

v

GERALD N. GRIFFIN, Staff Sergeant,
U. S. Army, Appellant

15 USCMA 135, 35 CMR 107

No. 17,568

November 27, 1964

*Captain J. Philip Johnson* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Captain Charles W. Schiesser.*

*Captain Charles M. Pallesen, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened by the Commanding General, United States Army Armor Center, Fort Knox, Kentucky, charged with absence without leave, and four specifications of drawing bad checks with intent to defraud, in violation of Articles 86 and 123a, Uniform Code of Military Justice, 10 USC §§ 886 and 923a, respectively.

When appellant was called upon to plead, in open court, his defense counsel responded, in the presence of appellant, that he pleaded guilty to the charge and specification of absence without leave and not guilty to each of the charges and specifications as to the drawing of bad checks. The law officer did not hold an out-of-court hearing to inquire into the basis for the appellant's pleas, as entered by counsel, nor did he make explanation of the legal rights of the appellant in this situation. Appellant was found guilty of all of the offenses charged. He was sentenced to a bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction to the lowest enlisted grade.

The convening authority approved the proceedings, and a board of review in the office of The Judge Advocate General of the Army affirmed the findings of guilty of absence without leave. However, it disapproved the findings of guilty of all of the bad check offenses and dismissed those charges. The board approved only so much of the sentence as provides for total forfeitures, confinement at hard labor for nine months, and reduction to the lowest enlisted grade.

This Court granted review on the following issue:

"THE LAW OFFICER ERRED IN FAILING TO MAKE PROPER INQUIRY AS TO THE PROVIDENCY OF THE ACCUSED'S PLEA OF GUILTY TO CHARGE I AND ITS SPECIFICATION, CREATING MORE THAN A FAIR RISK OF IMPROVIDENCY."

We observe that both parties have briefed and argued the case on the issue of prejudicial error in the failure of the law officer, before accepting the plea of guilty, to explain the meaning and effect thereof as required by paragraph 70b(2), Manual for Courts-Martial, United States, 1951. We shall consider the issue in like manner. We also observe that the offense of which appellant stands convicted involved a fifty-three day unauthorized absence, during which period all of the alleged bad checks charged in the other specifications were drawn.

Paragraph 70b, Manual for Courts-Martial, United States, 1951, provides the procedure for all cases in which a plea of guilty is entered in general, special, or summary courts-martial. Being a matter of procedure and not being inconsistent with the Uniform Code of Military Justice, these provisions have the force of law. Article 36 of the Code, 10 USC § 836; United States v Smith, 13 USCMA 105, 32 CMR 105. Paragraph 70b, supra, provides, in pertinent part, as follows:

"**Procedure if plea of guilty is entered.**—The following procedure is prescribed for all cases in which a plea of guilty is entered:

"(1) In general and special court-martial cases, the plea of guilty will be received only after the accused has had an opportunity to consult with the counsel appointed for or selected by him. If the accused has refused counsel, the plea should not be received.

"(2) Before accepting a plea of guilty the meaning and effect thereof will be explained to the accused by the law officer of a general court-martial, or the president of a special court-martial or by the summary court-martial unless it otherwise affirmatively appears that the accused understands the meaning and effect thereof. See 53h. Such explanation will include the following—

"That the plea admits every act or omission alleged and every ele-

ment of the offense charged (or of the lesser included offense to which it relates) and authorizes conviction of the offense to which the plea relates without further proof;

"That the maximum punishment authorized for the offense to which the accused has pleaded guilty may be adjudged upon conviction thereof;

"That unless the accused indicates that he understands the meaning and effect of the plea as explained, the plea of guilty will not be accepted. See appendix 8a for an example of such explanation.

"(3) The explanation made and the reply of the accused thereto will be set forth verbatim in the record of trial of a general court-martial or of a special court-martial in which a verbatim record is kept. In other records of trial by special court-martial the substance of the explanation and reply will be set forth in the record of trial. In records of trial by summary court-martial, the fact that a plea of guilty was explained will be recorded in the space provided."

Paragraph 70b, supra, is strikingly similar to Rule 11, Federal Rules of Criminal Procedure, which reads as follows:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty."

In United States v Robinson, 13 USCMA 674, 33 CMR 206, we had occasion to consider the importance of a plea of guilty and there equated the provisions of paragraph 70b to Rule 11. In *Robinson*, however, the question was not identical to the question here involved. In the *Robinson* case we pointed out:

"The question, and the only question, before us is whether a 'plea of guilty' entered prior to the lawful convening of the court-martial, and out of the presence of the persons appointed to constitute the court-martial, is sufficient to support a finding of guilty." [United States v Robinson, supra, at page 679.]

See Kercheval v United States, 274 US 220, 71 L ed 1009, 47 S Ct 582 (1927).

In the civilian Federal courts compliance with Rule 11, supra, is required. United States v Lester, 247 F2d 496 (CA 2d Cir) (1957); Kennedy v United States, 249 F2d 257 (CA 5th Cir) (1957); cf. Kennedy v United States, 259 F2d 883 (CA 5th Cir) (1958).

In United States v Butler, 9 USCMA 618, 26 CMR 398, Chief Judge Quinn made the following observation:

"A plea of guilty is a judicial confession. Perhaps even more than a pretrial confession, therefore, it must appear that the plea is made voluntarily. Shelton v United States, 242 F2d 101, 246 F2d 571 (CA 5th Cir) (1957), reversed and remanded on confession of error by the Solicitor General, 356 US 26, 2 L ed 2d 579, 78 S Ct 562 (1958). To that end, the trial judge must inquire into the circumstances and determine that the plea is the product of the accused's own free will and desire to confess his guilt. In other words, the trial judge must determine that the plea is voluntary.

• • • • •

". . . Consequently, the law officer was entirely correct in conducting a further examination of the accused before 'finally accepting' the plea. The difficulty with his examination, however, is that it did not go far enough. Not only should he have ascertained, as he properly did, that the accused understood the meaning and effect of the plea and the punishment to which he was subject, but also that the accused was entering the plea freely and voluntarily, without promise or coercion."

137

[United States v Butler, supra, at pages 619, 620.]

The Government contends that the law officer is under no duty to explain to an accused the meaning ▆▆▆▆▆▆▆ and effect of a guilty plea when it affirmatively appears that an accused understands the meaning and effect thereof. We point out, however, that at this stage of the trial before any court-martial, and specifically before this court-martial, the record contains nothing from which such an affirmative appearance could exist. In all trials before courts-martial the provisions of paragraph 70b should be observed.

In that connection, while the record does not reveal what occasioned the law officer's omission to advise appellant and make inquiry of him, we are willing to assume his lapse was merely inadvertent. However, we deem it appropriate to point out that compliance with the requirements of paragraph 70b would insure against any accused entering a guilty plea involuntarily or without full knowledge of the import thereof. It is to be stressed that proper inquiry, made at trial as the law requires, would obviate any necessity for dealing with such matters after the fact, at the appellate level.

We hold that it was error in this case for the law officer to have accepted appellant's plea of guilty without having complied with any of the provisions of paragraph 70b(1), 70b(2), 70b(3).

## II

Nevertheless, in accordance with Article 59(a), Uniform Code of Military Justice, 10 USC § 859, it becomes our obligation to determine whether the error, above mentioned, materially prejudiced the substantial rights of the accused. United States v Butler, supra.

We point out that paragraph 70b(2), supra, requires that the meaning and effect of a plea of guilty be explained to an accused "unless it otherwise affirmatively appears that the accused understands the meaning and effect thereof." Similar language does not appear in Rule 11, supra. In constru-

123

ing Rule 11, however, practically identical language has been used. In United States v Davis, 212 F2d 264, 267 (CA 7th Cir) (1954), the court said:

"We do not mean to say that a District Court must in every case follow a particular ritual in order to comply with Rule 11. A brief discussion with the defendant regarding the nature of the charges may normally be the simplest and most direct means of ascertaining the state of his knowledge. Or there may be other circumstances from which it is evident that the defendant has the requisite understanding. See Michener v United States, 8 Cir., 181 F2d 911, 918; United States v Denniston, 2 Cir., 89 F2d 696, 698, 110 ALR 1296."

In United States v Swaggerty, 218 F2d 875 (CA 7th Cir) (1955), cert den, 349 US 959, 99 L ed 1282, 75 S Ct 889 (1955), the foregoing language is quoted with approval.

At no stage of the proceedings, including this Court, has any contention been made that appellant was not guilty of absence without leave. Appellant does not contend that his plea was the result of any consideration other than his guilt; it is not contended that such plea was ill-advised nor does anything appear in this record to indicate the improvidency of the plea other than the naked claim posed by the language in the assignment of error, to which we have adverted.

In United States v Butler, supra, this Court examined into this state of case and held that, to justify reversal for a deficiency in complying with paragraph 70b, supra, it must appear that the same prejudiced the substantial rights of the accused. Chief Judge Quinn there said:

". . . True, the law officer made crystal clear to the accused he was not bound by the pretrial agreement and that, despite it, he could enter a plea of not guilty. He did not, however, specifically inquire into the voluntariness of the accused's plea. He should have done so. And with commendable candor the Government ad-

mits the deficiency. Under the circumstances, however, we cannot say that the law officer's failure prejudiced the accused.

". . . He does not now claim that his plea was the result of any consideration other than his own 'consciousness of guilt.' Wharton, Criminal Evidence, 12th ed, § 345. Nor does he claim that his plea was improvident or ill-advised. The record of proceedings shows that after full explanation of his right to have the case 'contested in open court' he requested his defense counsel to inform the convening authority that he 'voluntarily' desired to plead guilty. We conclude that the inadequacy of the law officer's inquiry was not such as to deprive the accused of due process of law or cast doubt upon the correctness of his conviction or the voluntariness of his plea. See United States v Chandler, CM 399665, July 9, 1958." [United States v Butler, supra, at page 620.]

This language is in marked contrast to the language and holding of the Supreme Court in Von Moltke v Gillies, 322 US 708, 720, 92 L ed 309, 68 S Ct 316 (1948):

". . . For, assuming the correctness of the two latter contentions, we are of the opinion that the undisputed testimony previously summarized shows that when petitioner pleaded guilty, she did not have that full understanding and comprehension of her legal rights indispensable to a valid waiver of the assistance of counsel."

Appellant was represented at his trial by the certified defense counsel, a captain in The Judge Advocate General's Corps, who had been appointed defense counsel several months before trial. Defense counsel, throughout the trial, evidenced clear understanding of his case and a previously conceived strategy upon which it would be difficult to improve. His defense was based upon a question of law as to the sufficiency of notice of nonpayment of the checks to dispense with necessity for proof of intent to defraud and lack of funds, under the new bad check provision in Article 123a, Uniform Code of Military Justice, supra, and the Addendum to Manual for Courts-Martial, United States, 1951, January 1963, covering the same. While he did not prevail before the court-martial, the identical question was decided in his favor by the board of review on what appears to be a question of first impression. This holding resulted in the dismissal of four specifications of violation of Article 123a and a reassessment of the sentence, eliminating the bad-conduct discharge and reducing the period of confinement from twelve months to nine months.

We agree that the presence of counsel in a trial by court-martial does not eliminate the necessity for the law officer to explain to an accused the meaning and effect of a plea of guilty. However, the presence of counsel is a circumstance which may fairly be taken into account in determining the nature and extent of the inquiry to be made. It hardly seems reasonable to assume that thoroughly competent military counsel, as this record shows trial defense counsel to be, overlooked the necessity for knowledge in this area by his accused. That appellant was laboring under no such misapprehension seems clear from his evident intelligence, experience, study of law, and the fact that pleas of not guilty to four specifications were entered and a plea of guilty to the specification of absence without leave. Another, and even stronger circumstance is shown by appellant's sworn testimony prior to sentence when he was asked: "Do you feel you would ever go AWOL from the service again?" to which he answered, "No, sir." We earlier pointed out that appellant has at no time denied his guilt of absence without leave. From the record it also appears that in a post-trial interview with a staff judge advocate, he again acknowledged his guilt of that offense. See Gundlach v United States, 262 F2d 72 (CA4th Cir) (1958), cert den, 360 US 904, 3 L ed 2d 1255, 79 S Ct 1283; United States v Diggs, 304 F2d 929 (CA 6th Cir) (1962); United States v Davis, supra.

This record reveals that the appel-

lant had completed high school, was thirty years of age and of superior intelligence, being possessed of a 143 GT score. Prior to his service in the Army, he served for approximately ten years in the United States Marine Corps, reaching the grade of staff sergeant. At the time of trial he had served in the Army for approximately three years and was a staff sergeant.

Principally from documentary evidence submitted on behalf of appellant in the hearing prior to sentence, it is made evident that during his military service he completed the following schools and courses of instruction: Marine Corps Institute Chemical Warfare Defense Course, Radiac Instruments Course, and Marine Noncommissioned Officer Course; The CBR Enlisted Course at Army Chemical Corps School (graduated number 1 in a class of 49 students); Marine Corps Division First Sergeant's School (graduated number 1 in a class of 26); U. S. Army 6th CBR Enlisted Course; U. S. Naval School for Instructors; U. S. Army Crime Prevention Course (excellent rating); U. S. Army Course in Investigative Methods and Preservation of Evidence (superior rating); U. S. Army Course, Authority and Jurisdiction, Department of Army Security Police (excellent rating); Marine Basic Supply Procedures; U. S. Air Force Instructor's Course; U. S. Air Force Air Traffic Control Fundamentals Course; U. S. Navy Air Controlman Course; Marine Course in Bookkeeping I (99.12% grade average). The record also reveals that, while serving in the Marine Corps, appellant pursued a course in Commercial Law through the University of South Carolina.

That the education, experience, and intelligence of an accused are circumstances to be taken into consideration in assessing the question before us is sustained by cases in this Court and other Federal courts as well. United States v Butler, supra; Gundlach v United States, supra; United States v Kniess, 264 F2d 353 (CA 7th Cir) (1959). In justice to appellant we should state that the record reflects

he was never previously charged with a violation of law, either civilian or military. We believe, however, that cases we have cited in which appellate courts have considered previous appearances of the accused to defend charges against him are valid. Surely the appellant, with thirteen years of military service in both the Marine Corps and Army with the grade of staff sergeant in each, successful completion of the Marine Corps First Sergeant's School (with a standing of number one); the Naval School for Instructors; the Army Course in Crime Prevention; the Army Course in Investigative Methods and Preservation of Evidence; Army Course, Authority and Jurisdiction, Department of Army Security Police; the Air Force Instructor's Course, and others detailed above, manifestly had a broad understanding of the whole matter. The charge and specifications were read to him by his commanding officer before the same were referred to trial and a copy subsequently served upon him. We could not, with reason, conclude that appellant was not fully aware of the meaning and effect of the plea of guilty, and the elements of and punishment for absence without leave.

We find no fair risk that the error of the law officer, in failing to explain to appellant the meaning and effect of his plea of guilty, materially prejudiced appellant's substantial rights.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

In my opinion, not only was it error for the law officer to fail to inquire into the providence and voluntariness of accused's plea of guilty but it was prejudicial error. The inquiry is required by the terms of the Manual for Courts-Martial, United States, 1951; it was understood by Congress in enacting Uniform Code of Military Justice, Article 45, 10 USC § 845, that such would be done in every case; and we have heretofore uniformly held receipt of a plea of guilty necessitated an ex-

planation of its meaning and effect. United States v Butler, 9 USCMA 618, 26 CMR 398; United States v Palacios, 9 USCMA 621, 26 CMR 401. To hold to the contrary simply means that we will search the record and if it reflects that the accused is a mature, educated individual, we will find his plea provident even though there is no affirmative indication that such was the case. In doing this, I believe we open the door to the grossest abuse, particularly in light of the guilty plea program followed in two of the armed services, and substitute our appellate speculation for an inquiry which my brothers concede was required to be made at the trial. I cannot join in such a holding.

The operative facts are quite simple. Accused, charged *inter alia,* with absence without leave, in violation of Code, supra, Article 86, 10 USC § 886, through counsel, entered a plea of guilty. To this plea, which judicially admitted that he had been absent without authority for the period alleged, the law officer made no pretense of inquiring into the accused's understanding of the nature and effect of his plea; whether it was entered providently or voluntarily; or whether it had been made pursuant to a pretrial arrangement with the convening authority. The trial proceeded, and the accused was found guilty. Indeed, in light of the later board of review action disapproving and dismissing the remaining charges against him—to which he had pleaded not guilty—such finding is the sole basis for the sentence of the court-martial.

Pleas of guilty in courts-martial are received under the terms of Code, supra, Article 45, which provides that they shall be of no effect if the accused thereafter "sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect." In recommending the passage of this Article, the House and Senate Armed Services Committees noted that such was done upon the assurance that implementing regulations would require an inquiry into the circumstances surrounding the plea.

Thus, House Report No. 491, 81st Congress, 1st Session, stated, at page 23:

"The provisions of this article will be supplemented by regulations issued by the President. It is contemplated that the recommendations of the Keeffe Board as to the procedure to be followed by a court martial when a plea of guilty is entered will be adopted. The proposed procedure is as follows (see Keeffe report, p 142):

.   .   .   .   .

"(2) In every case the meaning and effect of a plea of guilty should be explained to the accused (by the law officer of a general court martial; by the president of a special court martial; by the summary court), such explanation to include the following:

"(a) That the plea admits the offense as charged (or in a lesser degree, if so pleaded) and makes conviction mandatory.

"(b) The sentence which may be imposed.

"(c) That unless the accused admits doing the acts charged, a plea of guilty will not be accepted.

.   .   .   .   .

"(4) The explanation made and the accused's reply thereto should be set forth in the record of trial exactly as given."

See also Senate Report No. 486, 81st Congress, 1st Session, page 20, and dissenting opinion, United States v Watkins, 11 USCMA 611, 29 CMR 427.

Moreover, in testifying before the Committee, Mr. Felix Larkin, General Counsel, Department of Defense, in answer to expressions that guilty pleas might be unfairly obtained from military defendants, declared that the proposed explanation was designed to obviate that possibility. Of this, he said:

"We feel that is a procedure which will give an added amount of protection to the innumerable cases where pleas of guilty are taken, particularly among the younger men.

"I think it would have the added advantage of settling once and for all

that he is the man who did what he is charged with doing and we would be relieved thereafter of the continually [sic] complaint of accused that they did not understand what they were doing when they took their plea.

"In addition to that, we would have the colloquy between the court and the accused at the taking of the plea and the record transcribed verbatim and not just have a form which is printed and says the accused was informed of his rights." [Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1054.]

Such regulations are prescribed in the Manual, supra, which provides pertinently:

"(2) Before accepting a plea of guilty *the meaning and effect thereof will be explained to the accused by the law officer of a general court-martial* . . . unless it otherwise affirmatively appears that the accused understands the meaning and effect thereof. . . .

. . . . .

"(3) The explanation made and the reply of the accused thereto will be set forth verbatim in the record of trial. . . ." [Emphasis supplied.] [Paragraph 70*b*, Manual, supra.]

As noted by the author of the principal opinion, the Federal Rules of Criminal Procedure similarly require an explanation of the accused's plea and inquiry into the circumstances surrounding it. Federal Rules of Criminal Procedure, Rule 11. In Domenica v United States, 292 F2d 483 (CA 1st Cir) (1961), defendant was allowed to change his plea from not guilty to guilty, but no inquiry was conducted into his understanding of the nature of the charge. He had earlier pleaded guilty to a state indictment involving substantially the same acts as set forth in the Federal charge. In reversing and remanding for a failure to comply with Rule 11, the court said, at page 486:

"It is true that the court had the further fact that petitioner had pleaded guilty in the state court to essentially the same offense. We cannot think this made a substantial difference. The circumstances of that plea do not appear. Nor does the rule make an exception because petitioner was represented by counsel.

"Finally, it appears that after the plea had been accepted and sentence imposed, counsel, as an afterthought, asked that it 'appear in the record that the defendant changed his plea from not guilty to guilty voluntarily,' to which the court assented. The court did not ask petitioner if he agreed, and petitioner now says he did not even hear counsel speak. This statement by counsel was insufficient even if heard."

In United States v Mack, 249 F2d 421 (CA 7th Cir) (1957), it was similarly declared, at page 423:

"Rule 11 of the Rules of Criminal Procedure, 18 USCA, provides that the trial court shall not accept a plea of guilty without first determining that the plea is made voluntarily and with understanding of the nature of the charges. The record in this case is completely devoid of any showing that the defendant-appellant Helen Mack entered a plea of guilty voluntarily and with understanding of the nature of the charges. Counsel simply announced to the District Court that on her behalf he was withdrawing her plea of not guilty to Counts 1, 2 and 3 and asking that there be substituted in lieu thereof a plea of guilty and that he had acquainted her with the consequences of her plea. The very absolute minimum required to comply with the mandate of Rule 11 imposed upon the District Court the necessity of ascertaining if that was her desire; if she was pleading guilty voluntarily, and if she understood the nature of the charges to which she was entering a plea of guilty."

See also Julian v United States, 236 F2d 155 (CA 6th Cir) (1956), and Kadwell v United States, 315 F2d 667 (CA 9th Cir) (1963).

142

These authorities establish that compliance with Rule 11 is mandatory in the Federal courts. Bryant v United States, 189 F Supp 224 (D ND) (1960), vacated on other grounds, *sub nom* Kessel v United States, 303 F2d 563 (CA 8th Cir) (1962). While we have not heretofore considered a case in which, as here, there was a total absence of any inquiry into the accused's plea or explanation of its meaning and effect, it seems to me that the Federal rule is the proper one to be applied in the administration of criminal justice. As we said, in United States v Butler, supra, at page 619:

"A plea of guilty is a judicial confession. Perhaps even more than a pretrial confession, therefore, it must appear that the plea is made voluntarily. Shelton v United States, 242 F2d 101, 246 F2d 571 (CA 5th Cir) (1957), reversed and remanded on confession of error by the Solicitor General, 356 US 26, 2 L ed 2d 579, 78 S Ct 562 (1958). *To that end, the trial judge must inquire into the circumstances and determine that the plea is the product of the accused's own free will and desire to confess his guilt.. In other words, the trial judge must determine that the plea is voluntary.*" [Emphasis supplied.]

Moreover, we have uniformly placed the burden upon the Government to prove the voluntariness of pretrial confessions beyond a reasonable doubt, without an affirmative showing of which, we have said, such confession is not admissible in evidence. Manual, supra, paragraph 140*a*; United States v Odenweller, 13 USCMA 71, 32 CMR 71. And a "plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." Kercheval v United States, 274 US 220, 223, 71 L ed 1009, 47 S Ct 582 (1927); United States v Cruz, 10 USCMA 458, 28 CMR 24. Thus, even more than in the case of a confession, there should be the required affirmative inquiry into the voluntariness of the plea and the accused's understanding of its nature and effect. United States v Butler; United States v Palacios, both supra. I would so conclude, and would hold the failure of this law officer to make such inquiry requires reversal, there being nothing in the record to establish that accused knew of his right to plead not guilty; that he pleaded guilty voluntarily; that he was in fact guilty; that he was aware of the maximum sentence, or any of the other answers required to be obtained.

Turning to the rationale of the principal opinion, I note at the outset it gives no consideration to the Congressional purpose in enacting Code, supra, Article 45, subject to the belief that the meaning and effect of the accused's plea would be explained to him in every case. House Hearings, supra, page 1054; House Report No. 491, supra, page 23. Moreover, the precedents upon which it relies to find no prejudice in the absence of any explanation simply do not support the conclusion which it reaches. Thus, in United States v Davis, 212 F2d 264 (CA 7th Cir) (1954), the court, while noting that the district judge was not required to follow a particular ritual, held that Rule 11, supra, "is stated in mandatory language" and refused to relieve the judge of the duty of inquiry and explanation "solely because the accused, as here, is represented by counsel of his own choice." United States v Davis, supra, at page 267. Moreover, the court there found failure to comply with the Rule prejudicial as "the record here does not *conclusively* show that he [the defendant] had this necessary understanding" of the meaning and effect of his plea. *Id.*, at page 267 (emphasis supplied). As to the decision in United States v Swaggerty, 218 F2d 875 (CA 7th Cir) (1955), cert den, 349 US 959, 99 L ed 1282, 75 S Ct 889 (1955), it there appeared that the defendant personally told the court that he wished to plead guilty and that he had consented to do so after he "had been fully advised of the charges against him and of the possible consequences of pleading guilty." United States v Swaggerty, supra, at page 877. And, commenting in a later decision concerning its holding that

**143**

there was no prejudice to the defendant shown in the *Swaggerty* case, the same Circuit Court of Appeals declared:

> "The decision of this court in United States v Swaggerty, 7 Cir., 1955, 218 F2d 875, does not hold to the contrary as contended by the Government [*i.e.*, that compliance with Rule 11 is not essential]. There the District Court ascertained from the defendant himself that his counsel's request to withdraw defendant's plea of not guilty and enter a plea of guilty was with defendant's approval and in accordance with his desire." [United States v Mack, supra, at page 423.]

In this case, of course, the sole matter which appears in the record is the entry of accused's plea through counsel, and not a single inquiry with respect thereto was addressed to accused. There was simply no attempt to determine that the accused had the requisite understanding. United States v Davis; United States v Mack; United States v Butler; all supra. In short, the needed answers are missing, for the questions were not asked.

Nor does the fact that legally qualified counsel represented the accused excuse the failure of the law officer to inquire into the plea. Domenica v United States, supra. In United States v Diggs, 304 F2d 929 (CA 6th Cir) (1962), the Circuit Court of Appeals pointed out that "a District Judge is not relieved of the duty which is imposed upon him by Rule 11 solely because the defendant is represented by counsel of his own choice." United States v Diggs, supra, at page 930. And in United States v Davis, supra, at page 267, the court said:

> ". . . This rule is stated in mandatory language and the court is not relieved of the duty which it imposes solely because the accused, as here, is represented by counsel of his choice. The rule is simply and concisely stated, and it makes no such exception."

In addition, it might be noted that, in many of the cases in which we have set aside pleas of guilty—in fact, all

in which general courts-martial were involved—the accused has been represented by qualified counsel, duly certified as fit to perform his duties by the appropriate Judge Advocate General. See, for example, United States v Dosal-Maldonado, 12 USCMA 442, 31 CMR 28, in which the law officer called inconsistencies to the attention of counsel and "was assured the matter had been fully discussed with the accused"; and United States v Fernengel, 11 USCMA 535, 29 CMR 351, in which advice of duly certified counsel led directly to a holding that the plea was improvident. See also United States v Huff, 11 USCMA 397, 29 CMR 213, and United States v McFarlane, 8 USCMA 96, 23 CMR 320. Indeed, if representation by counsel is to be the governing factor, then we would never be faced with an issue of improper pleas of guilty in general courts-martial. Moreover, if the presence of counsel is of such importance, what of the silence of the prosecutor—equally well trained, for he won below—regarding the judge's omission of his duty? The answer lies in the fact that compliance with the rule is the law officer's responsibility, and that representation by counsel is not a matter of importance, as demonstrated by our decisions and those cited from the Federal system.

Finally, reliance is placed upon various factors in the record which indicate that accused, because of his education, experience, and military background, was probably aware of the meaning and effect of his plea. The answer to this is found in Von Moltke v Gillies, 332 US 708, 92 L ed 309, 68 S Ct 316 (1948). There, the Supreme Court declared at page 720:

> "*We accept the government's contention that the petitioner is an intelligent, mentally acute woman.* It is not now necessary to determine whether, as the Government argues, the District Court might reasonably have rejected much of petitioner's testimony. Nor need we pass upon the government's contention that the evidence might have supported a finding that the FBI lawyer-agent did not actually give her the erroneous

advice that mere association with criminal conspirators was sufficient in and of itself to make a person guilty of criminal conspiracy. For, assuming the correctness of the two latter contentions, *we are of the opinion that the undisputed testimony previously summarized shows that when petitioner pleaded guilty, she did not have that full understanding and comprehension of her legal rights indispensable to a valid waiver of the assistance of counsel.*" [Emphasis supplied.]

What was applicable in that case to the defendant's deprivation of counsel is equally applicable here to the failure to explain to the accused the nature and effect of his plea. The record is silent as to any explanation; there are no answers concerning the questions needed to be put; and no matter what his background or intelligence, we cannot properly impute to Griffin the legal expertise required to understand the elements of a criminal offense. As Mr. Justice Frankfurter so aptly stated in Von Moltke v Gillies, supra, at page 727:

"We are dealing, no doubt, with a person of intellectual acuteness. But it would be very rare, indeed, even for an extremely intelligent layman to have the understanding necessary to decide what course was best calculated to serve her interests. . . ."

See also United States v Rinehart, 8 USCMA 402, 24 CMR 212, and United States v Kentner, 12 USCMA 667, 31 CMR 253.

These authorities soundly establish the truth that a layman cannot be expected, despite the extent of his education and training, to understand the intricacies of the criminal law. Von Moltke v Gillies, supra; United States v Kentner, supra. The whole concept underlying Rule 11 in the Federal courts and paragraph 70 of the Manual, supra, is not only that the accused will, in connection with his plea of guilty, receive advice from a legally qualified person but that he will receive it also from one so trained who has no connection with either side of the case, *i. e.*, the trial judge. United States v Davis, supra. This was the Congressional purpose in enacting Code, supra, Article 45, and at the same time evincing an intention that there be spread upon the record a verbatim explanation to the accused of the nature and effect of his plea. Here, not only is that absent, but there is no affirmative indication that he was aware of the legal implications of his act. Cf. United States v Swaggerty, supra. At the most, we simply speculate from his background and the information in mitigation and extenuation that he *may* have understood his plea or *should* have done so. That is not enough. Von Moltke v Gillies, supra; United States v Mack, supra. And in the absence of such circumstances insuring the providence of his plea or a proper explanation being given—as we said would be required in United States v Butler, supra—I believe reversal and remand of the case is required. That is the case with which we are confronted, and I would set aside the decision of the board of review.